UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cr-20038-SLD-EIL |
| | ) | |
| AVERS DOUGLAS, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

ORDER

Before the Court are Defendant-Petitioner Avers Douglas's *pro se* Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se

2255 Motion"), ECF No. 43, motion to proceed *in forma pauperis*, ECF No. 45, counseled

Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("Counseled 2255 Motion"), ECF No.

47, and counseled motion for a status conference, ECF No. 51.  For the reasons that follow, the

Counseled 2255 Motion is DENIED, and the remaining motions are MOOT.

**BACKGROUND**

On May 5, 2016, a grand jury indicted Douglas on one count of possessing a firearm after

having previously been convicted of a crime punishable by more than one year of imprisonment

in violation of 18 U.S.C. § 922(g)(1) (in other words, being a felon in possession of a firearm).

Indictment 1, ECF No. 1.  Assistant Federal Public Defender Elisabeth Pollock was appointed to

represent him.  May 19, 2016 Min. Entry.  Douglas pleaded guilty to the charge against him

without a plea agreement.  *See* July 21, 2016 Min. Entry (noting that Douglas entered a plea of

guilty before United States Magistrate Judge Eric I. Long); Order Approving Magistrate Judge

Recommendation, ECF No. 18 (accepting plea and adjudging Douglas guilty).

1

The United States Probation Office ("USPO") prepared a presentence investigation report ("PSR") in advance of sentencing. PSR, ECF No. 23. USPO listed Douglas's base offense level as 24 because he committed the offense after sustaining at least two felony convictions for either a crime of violence or controlled substance offense, *id.* ¶ 18, and assessed a four-level increase because the firearm he possessed had an obliterated serial number, *id.* ¶ 19. After reductions for acceptance of responsibility, *id.* ¶¶ 25–26, USPO listed Douglas's total offense level as 25, *id.* ¶ 27. With a criminal history category of VI, *id.* ¶ 55, his Sentencing Guidelines range for imprisonment would have been 110 to 137 months, *id.* ¶ 116. Because his statutory maximum term of imprisonment was ten years, *id.* ¶ 115, however, the Guidelines range became 110 to 120 months, *id.* ¶ 116. Douglas did not object to the PSR.

On December 5, 2016, United States District Judge Colin Bruce, who was then presiding over the case, sentenced Douglas to 110 months of imprisonment and a three-year term of supervised release. Dec. 5, 2016 Min Entry; Judgment 1–3, ECF No. 26.

Douglas filed an appeal, Not. Appeal, ECF No. 30, but later voluntarily dismissed it, Mandate 3, ECF No. 39 (noting that the appeal was dismissed pursuant to Federal Rule of Appellate Procedure 42(b) and Seventh Circuit Rule 51(f), which provide for voluntary dismissal by a criminal defendant).

In June 2020, Douglas filed the Pro Se 2255 Motion, in which he argued that Judge Bruce violated 28 U.S.C. § 455 by failing to recuse from his case and that Judge Bruce presiding over his case violated his due process rights. Pro Se 2255 Mot. 4–5.[1] These claims are based on *ex parte* communications between Judge Bruce and the United States Attorney's Office for the Central District of Illinois ("USAO") that came to light in 2018. *See United States v. Atwood*,

---

[1] The Court uses the page numbers generated by CM/ECF because the Pro Se 2255 Motion is not consistently paginated.

941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of the discovery and disclosure of the communications). Judge Bruce recused himself from hearing Douglas's motion, and the case was reassigned to this Court. June 19, 2020 Text Order of Recusal.

The Court appointed counsel to represent Douglas with respect to the Pro Se 2255 Motion. June 22, 2020 Text Order. On September 29, 2020, counsel filed the Counseled 2255 Motion, mooting the Pro Se 2255 Motion. *See* Counseled 2255 Mot. 1.[2] The Counseled 2255 Motion raises the following claims: that Judge Bruce was actually biased against Douglas and presiding over Douglas's case violated Douglas's due process rights, *id.* at 12; that Judge Bruce should have recused himself under 28 U.S.C. § 455(a) based on an appearance of bias, *id.* at 12–13; and that the Federal Public Defender's office ("FPD") provided Douglas with ineffective assistance of counsel by failing to include claims based on Judge Bruce's *ex parte* communications in his appeal and by failing to obtain agreements with the Government to toll the time for him to bring his claims, *id.* at 23–24.

The Government filed its response on February 1, 2021. Resp., ECF No. 50. It argues that Douglas cannot show that Judge Bruce was actually biased against him, that his "nonconstitutional appearance of bias claim is not a proper basis for relief in a § 2255 proceeding," that he procedurally defaulted his appearance of bias claim, that the appearance of bias claim is untimely, and the ineffective assistance of counsel claims do not warrant relief. *Id.* at 23–24.

No reply was filed, though Douglas later filed a motion for a status conference.

---

[2] Though the Counseled 2255 Motion states that it "is intended to supplement" the Pro Se 2255 Motion, Counseled 2255 Mot. 1, it reasserts the claims raised in the Pro Se 2255 Motion, *see id.* at 1–2, so the Court finds the Pro Se 2255 Motion moot.

## DISCUSSION

### I.    Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack."  *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

### II.    Analysis

#### A.    Due Process and § 455(a) Claims

Both the due process and § 455(a) claims are based on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, nearly two years after Douglas was sentenced.  These communications have been detailed and summarized elsewhere.  *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf).  Douglas argues that these communications demonstrate that Judge Bruce was actually biased against him, violating his due process rights, and, alternatively, that they demonstrate an appearance of bias that required Judge Bruce to recuse himself under 28 U.S.C. § 455(a).  *See* Counseled 2255 Mot. 12–13.

### 1. Due Process

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'" *Shannon*, 39 F.4th at 883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)).  A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here.  In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern the defendant's case.  It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the communications "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted).  Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062.  It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted).  Douglas relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no emails that concern his case

specifically or any evidence showing that the communications impacted his case.  *See* Counseled 2255 Mot. 4–15.

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing.  *Shannon*, 39 F.4th at 884–86.  In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence.  *Id.* at 886–87.  Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments.  *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority).  Douglas points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against him.  Instead, he is relying on the *ex parte* communications alone.  *See* Counseled 2255 Mot. 14–15.  The Court thus finds that Douglas has failed to show either actual bias or a risk of bias so high that it violates due process.  The due process claim is denied.

### 2.  Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The Government does not explicitly address whether Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he should have recused himself from Douglas's case under § 455(a).[3]  Instead, it argues that this

---

[3] To the Court's knowledge, the Government has conceded an appearance of impropriety—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so far.  *See, e.g.*, *Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

statutory claim is procedurally defaulted, untimely, and not cognizable on § 2255 review.  Resp. 39–48.  The Court addresses each of these arguments.

### a.  Procedural Default

"A claim cannot be raised for the first time in a § 2255 motion *if it could have been* raised at trial or on direct appeal."  *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016) (emphasis added).  The Government argues that Douglas procedurally defaulted his § 455(a) appearance of bias claim by failing to raise it on appeal.  Resp. 42–43.  Anticipating an argument that "the *ex parte* emails had not been revealed at the time, and therefore [Douglas] could not have raised such a claim in an appeal," the Government argues that "the emails had nothing to do with [Douglas's] case, and [Douglas] cannot excuse his own procedural failure by belatedly asserting misconduct in unrelated cases to bolster a claim he chose not to make."  *Id.* at 43.  But the Government provides no case law support for its argument that Douglas cannot rely on these communications, which became public after his time to appeal passed, to excuse his default. Instead, it appears to be making an argument that the communications do not support Douglas's claim.  But that is better considered as an argument on the merits.  The Court does not find that Douglas procedurally defaulted this claim.

### b.  Timeliness

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking to vacate his sentence under § 2255 has one year to do so, from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Douglas acknowledges that his Pro Se 2255 Motion was filed outside the one-year statute of limitations provided by 28 U.S.C. § 2255(f)(1) but argues that he is entitled to equitable tolling of the statute of limitations because Federal Public Defender Thomas Patton made a legal error and failed to preserve his right to raise a claim based on Judge Bruce's failure to recuse from his case.  Counseled 2255 Mot. 2–3.[4]  The Government responds that Douglas is not entitled to equitable tolling because there is "no evidence showing that he exercised diligence in preserving the appearance of bias claim."  Resp. 48.

The time limits set forth in § 2255(f) are subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that the statute of limitations for § 2254 motions are subject to equitable tolling); *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017) (applying the equitable tolling doctrine to a motion under § 2255).  A petitioner is entitled to

---

[4] The Court cannot ascertain whether Douglas contends his motion is timely under § 2255(f)(2), (3), or (4).  He states that there are "a few exceptions to the on[e]-year period of limitations in cases where there was an impediment from making a motion," citing to § 2255(f)(2), (3), and (4).  Counseled 2255 Mot. 2.  But he makes no argument that any of these provisions apply.  Instead, he goes on to argue for equitable tolling, *id.* at 2–3, which is a common law doctrine distinct from the statutory provisions, *cf. Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013) (distinguishing between common law equitable tolling and § 2255(f)(2)).  In any case, the Court finds that Douglas's motion is not timely under § 2255(f)(2), (3), or (4).  Because Douglas does not allege that any government action created an impediment to filing a § 2255 motion, § 2255(f)(2) does not apply.  And because Douglas does not rely on a new right recognized by the Supreme Court, § 2255(f)(3) does not apply.  The Government argues that even if § 2255(f)(4) applies, the Pro Se 2255 Motion was filed outside the statute of limitations because it was filed more than a year after Douglas could have learned of Judge Bruce's improper communications.  Resp. 45.  The Court agrees, though it declines to find on the record before it that Douglas should have been aware of the communications in August 2018 when they became public or in October 2018 when a motion for a new trial was filed in a different case, as the Government argues, *see id.*  The Government provided a letter from Patton to Douglas dated November 26, 2018 informing him of the communications.  *See* Patton Letter, Resp. Ex. B, ECF No. 50-2 at 3–4.  At the latest, Douglas should have been aware of the communications in late 2018 when he received this letter.  His Pro Se 2255 Motion was not filed until June 2020, which was more than a year later.

equitable tolling if he can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649 (quotation marks omitted). "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). "A petitioner bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling." *Mayberry v. Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018).

Here, Douglas barely develops an argument that he has met both elements of the *Holland* test. He cites *Holland* for the proposition that "[a]n attorney's unprofessional conduct can be so egregious as to create an extraordinary circumstance warranting equitable tolling" but then merely states that Patton told him he made a legal error and failed to preserve his right to bring a claim based on Judge Bruce's failure to recuse. *See* Counseled 2255 Mot. 2 (quotation marks omitted). Douglas does not acknowledge that in *Holland*, the Supreme Court held that "a garden variety claim of excusable neglect . . . does not warrant equitable tolling," *Holland*, 560 U.S. at 651–52 (quotation marks and citations omitted), or that the facts of *Holland* are quite distinguishable from the facts of his case. In *Holland*, the Supreme Court found that the attorney's conduct "may well" have warranted equitable tolling because the facts showed that it went beyond simple negligence: the attorney did not file the petitioner's § 2254 petition on time despite the petitioner sending "many letters that repeatedly emphasized the importance of his doing so"; he did not research the applicable filing date; he did not inform the petitioner that the Florida Supreme Court had decided his case despite the petitioner's "many pleas for that information"; and the attorney "failed to communicate with his client over a period of years, despite various pleas from [the petitioner] that [the attorney] respond to his letters." *Id.* at 652.

The Court remanded for further consideration because "no lower court ha[d] yet considered in detail the facts of th[e] case to determine whether they indeed constitute[d] extraordinary circumstances sufficient to warrant equitable relief." *Id.* at 653–54.  Douglas points to no facts— and cites no further cases—to support his argument that Patton's legal mistake would go beyond mere negligence and support a finding of extraordinary circumstances warranting equitable tolling. *See Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) ("[I]ncorrect legal advice generally does not by itself trigger equitable tolling.").  Moreover, Douglas merely states in a conclusory fashion that he "diligently filed his *pro se* filing upon learning of the mistake." Counseled 2255 Mot. 3.  But "mere conclusory allegations of diligence are insufficient." *Mayberry*, 904 F.3d at 531.

The Court concludes that Douglas has failed to establish his entitlement to equitable tolling, so it finds his § 455(a) claim untimely.

### c.  Cognizability

Even if Douglas's § 455(a) claim were not untimely, it would not warrant relief.  Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974).  Although the language of § 2255 suggests that a prisoner can obtain relief if his sentence was imposed in violation of the "laws of the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can be raised on a § 2255 motion." *Davis*, 417 U.S. at 346.  The "appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and whether it presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the federal law

violation qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[5]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[6] In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of a fundamental defect resulting in a complete miscarriage of justice." *Id.* (quotation marks omitted). It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255." *Id.* It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency." *Id.* And it appeared to hold that a § 455(a) claim is only cognizable where the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap. *Id.* at 82, 83.[7]

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed without deciding "that as a general matter collateral attack upon a criminal sentence may be

---

[5] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

[6] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available." *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)). But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

[7] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear. The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]." *Couch*, 896 F.2d at 80 (quotation marks omitted). The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief. *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255."). It noted that by resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so." *Id.* at 82. The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

available under section 2255 to pursue a claim of appearance of impartiality." It made this assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). *Liljeberg* involved a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under § 455(a). *Liljeberg*, 486 U.S. at 858, 863. Rule 60(b)(6) allows district courts to grant relief from a final civil judgment in "extraordinary circumstances." *Id.* at 863–64 (quotation marks omitted). The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

*Id.* at 864. The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental defect' that would justify vacating an otherwise lawful sentence under section 2255." *Hardy*, 878 F.2d at 97. It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would similarly hold that a criminal judgment may be collaterally attacked based on an appearance of impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption that it would "for purposes of [that] appeal." *Id.* The only dispositive holding from the Second Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255 because she was aware of the basis for the judge's recusal when direct appeal was available. *Id.* at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255 review, but only if it meets the standard laid out in *Davis*. Under that standard, the alleged § 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage of justice" and "present[] exceptional circumstances where the need for the remedy afforded by

the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted).  Here,

the alleged error does not rise to that level.  As noted above, Douglas has not established a due

process violation and has no evidence that any of Judge Bruce's communications or relationships

with the USAO impacted his proceedings or prejudiced him.  *Cf. Bachner v. United States*, 517

F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete

miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no

injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply

with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the

defendant did not object and no prejudice resulted because the case "lack[ed] aggravating

circumstances rendering the need for the remedy afforded by the writ of *habeas corpus* . . .

apparent" (second alteration in original) (quotation marks omitted))).  And any violation of

§ 455(a) would have no bearing on Douglas's guilt or innocence.  *See Hussong v. Warden*, 623

F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254 "petitioner's incarceration in

violation of section 2515 of the federal wiretap statute d[id] not meet the required 'complete

miscarriage of justice' standard required of nonconstitutional violations of federal law in order to

be cognizable under the federal habeas corpus statute," noting in part that "the issues he ask[ed]

[the court] to redetermine h[ad] no bearing on the basic justice of his incarceration" and that

nothing in the record indicated he was not guilty (quotation marks omitted)).  Moreover, Douglas

was sentenced to the low end of his Guidelines range.

　　The Court does not find that *Liljeberg* requires a different result.  *Liljeberg* identified

three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6)

due to extraordinary circumstances.  *See Liljeberg*, 486 U.S. at 858.  And in *Atwood*, the Seventh

Circuit used those factors to determine whether a statutory recusal error was harmless on appeal.

*Atwood*, 941 F.3d at 885.  The *Davis* standard for nonconstitutional errors requires more than a showing of extraordinary circumstances or that a statutory error was not harmless.  It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).  Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard.  *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."). "There is a difference between reversing an error on appeal and correcting the error years later." *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Douglas has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice.  His § 455(a) claim, therefore, does not warrant relief under § 2255.

### B.  Ineffective Assistance of Counsel Claims

Douglas asserts that the FPD "provided him ineffective assistance of counsel" in violation of the Sixth Amendment in two ways.  *See* Counseled 2255 Mot. 23–24.  First, he argues that the FPD "was ineffective for failing to include claims [based on Judge Bruce's *ex parte* communications] in direct appeals once the full scope of the . . . communications was revealed." *Id.* at 24.  And second, he argues that the FPD was ineffective for failing to include him in a tolling agreement for actual bias claims and for failing to secure an agreement for appearance of bias claims.  *Id.*

The Government argues that Douglas "ignores the fact that the FPD[] did not represent him on appeal, nor at any point were they appointed to represent him in a collateral proceeding" and that "[t]he FPD[]—the only attorneys [Douglas] argues provided ineffective assistance—cannot have been ineffective for doing or not doing something when they did not even represent him." Resp. 53. It also argues that "[i]t is disingenuous to suggest, with the distorting effect of hindsight, that any counsel should have appealed and alleged bias" when Douglas had just received a low-end-of-the-Guidelines sentence and "the *ex parte* emails had not surfaced as yet," and that Douglas "ha[d] no right to counsel in a post-conviction setting." *Id.*

For similar reasons, the Court finds Douglas's claims meritless. Douglas was not represented by the FPD on appeal, *see* Mar. 8, 2017 Seventh Circuit Order, ECF No. 33 (granting Pollock's motion to withdraw and appointing Hannah Garst to represent Douglas), so the FPD cannot have provided ineffective assistance to him with respect to his appeal. And, in any case, Douglas's appeal was filed years before the *ex parte* communications came to light and his counsel could not have been ineffective for failing to raise a claim based on facts of which she could not be aware. And with respect to the tolling claims, Douglas had no Sixth Amendment right to postconviction counsel. *See Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal . . . ."); *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ." (citation omitted)). Accordingly, any deficient performance with respect to securing postconviction tolling agreements does not create a Sixth Amendment violation.

## III.    Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability. Rule 11(a), Rules Governing § 2255 Proceedings. A court can grant

a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Douglas has failed to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

## CONCLUSION

Accordingly, Defendant-Petitioner Avers Douglas's counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 47, is DENIED.  His *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 43, is MOOT.  His motion to proceed *in forma pauperis*, ECF No. 45, is MOOT because there is no filing fee for a § 2255 motion.  And his counseled motion for a status conference, ECF No. 51, is MOOT in light of this Order.  The Clerk is directed to enter judgment and close the accompanying civil case, No. 2:20-cv-02176-SLD.

Entered this 28th day of April, 2023.

s/ Sara Darrow
_____
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE